# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                |                                      |
|--------------------------------|--------------------------------------|
| **HANLEY-WOOD LLC,**           |                                      |
|     Plaintiff, |                                  |
|     v.     | Civil Action No. 10-1167 (JEB)       |
| **HANLEY WOOD LLC,**<br>et al.,|                                      |
|     Defendants. |                                 |

## **MEMORANDUM OPINION**

Before the Court is Plaintiff's Motion for Entry of Default Judgment. This case is an action for legal and equitable relief under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the common law tort of unfair competition.[1] Defendants Hanley Wood, LLC and Mutual Companies, LLC were served on July 13, 2010, and they have failed to answer or otherwise defend this action. The Clerk of Court entered a default on October 29, 2010, and Plaintiff has now moved for entry of default judgment pursuant to FED. R. CIV. P. 55(b)(2). On April 8, 2011, the Court gave Defendants one final opportunity to show cause why a default judgment should not be entered. They did not respond.

The determination of whether a default judgment is appropriate is committed to the discretion of the trial court. Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980). For a default judgment to enter, a defendant must be considered a "totally unresponsive" party and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of

---

[1] Plaintiff voluntarily dismisses Count III of the Complaint for defamation without prejudice pursuant to FED. R. CIV. P. 41(a).

default, or the motion for default judgment. Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. March 20, 2000) (citing Jackson, 636 F.2d at 836). Given "the absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense," it is clear that the standard for default judgment has been satisfied here. Id.

The Court has reviewed Plaintiff's Complaint and finds that it sufficiently alleges facts to support Plaintiff's claims of trademark infringement, cybersquatting, and unfair competition. The Court will therefore grant the relief requested.

**I.     Lanham Act**

Plaintiff first claims that Defendants have infringed on its valid trademarks in violation of the Lanham Act. To prevail on this count, "the plaintiff must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (internal quotation marks omitted). Plaintiff has sufficiently pled that it owns valid trademarks that have a secondary meaning and that there is a substantial likelihood of confusion, see Compl. at ¶¶ 10-11, 29, 31-37, 41-43, and Defendants' default admits these facts.

Plaintiff requests injunctive relief under the Lanham Act to prevent further violations of Plaintiff's trademark rights. See 15 U.S.C. § 1116 (authorizing same). "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction." American Civil Liberties Union v. Mineta, 319 F. Supp. 2d 69, 87 (D.D.C. 2004).

As discussed above, Plaintiff has succeeded by default on the merits of the instant action. Plaintiff has also shown, in its Motion for Default Judgment and the attached affidavit of Douglas C. Herbert, that Defendants have continued to infringe on its trademarks despite several informal demands to cease and desist, along with the filing of this lawsuit. See Mem. to Motion at 7-8. Generally, trademark infringement, by its very nature, carries a presumption of harm. See Health Ins., Ass'n of America v. Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) (citing Appleseed Foundation Inc. v. Appleseed Inst., Inc., 981 F.Supp. 672, 677 (D.D.C. 1997)). The Court further agrees that Defendants' continuing disregard for Plaintiff's rights demonstrates that Defendants will continue to infringe on Plaintiff's rights absent an injunction. This finding alone entitles Plaintiff to a permanent injunction. Walt Disney Co. v. Powell, 897 F.2d 565, 567 (D.C. Cir. 1990) ("When a copyright plaintiff has established a threat of continuing infringement, he is entitled to an injunction.") (citing Universal City Studios v. Sony Corp. of America, 659 F.2d 963, 976 (9th Cir. 1981)) (emphasis in original). The Court, moreover, finds that an injunction would not harm others, and that the public interest favors protecting against further violation of federal copyright and trademark laws. The Court, accordingly, concludes that Plaintiff is entitled to a permanent injunction as requested in its Motion.

The Lanham Act authorizes this Court to issue an injunction "upon such terms as the court deems reasonable." 15 U.S.C. § 1125(c). Here, Plaintiff requests this Court to permanently enjoin Defendants from:

> (1) [U]sing in any manner the marks and/or names "Hanley Wood" or "World of Concrete" or any variation of those marks and names, including but not limited to continuing to register, use, market, sell, offer for sale, dispose of, transfer, display, advertise, reproduce, or make available any services and/or products bearing such marks and/or names or any variation thereof which is likely to cause confusion, mistake, or deception among members of the trade and public, and from participating or assisting in any such activity,

including, but not limited to, domain names, directory names, metatags, hyperlinks, or any computer address to identify Defendants' web site or in connection with the retrieval of data or information, or other goods and services which are likely to conflict with Plaintiff's pre-existing rights in the marks and/or names "Hanley Wood" and "World of Concrete";

(2) [R]epresenting by any means whatsoever, directly or indirectly, that Defendants, and any products or services offered by Defendants, including information services provided via Defendants' web sites, the Internet or otherwise, are affiliated or associated in any way with, or sponsored by, Plaintiff Hanley-Wood, LLC, or its goods or services, and from otherwise taking any other action likely to cause confusion, mistake or deception on the part of consumers including, but not limited to, Internet users concerning the relationship or lack of relationship between Plaintiff and Defendants;

(3) [D]oing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers including, but not limited to, Internet users into believing that Defendants' goods or services come from, or are the goods or services of, Plaintiff Hanley-Wood, LLC, or are somehow sponsored or underwritten by, or affiliated with, Plaintiff Hanley-Wood, LLC, and from misappropriating the goodwill represented by the make and name, which rightfully belongs to Plaintiff Hanley-Wood, LLC;

(4) [F]orming, registering, or participating in the management of any business entity that contains in its name the words "Hanley" or "Wood" or any variation thereof;

Proposed Order to Motion at 1-3.

Plaintiff further asks this Court to order that Defendants change the name of the Limited Liability Company "Hanley Wood, LLC" on the corporate registry maintained by the District of Columbia Department of Consumer and Regulatory Affairs to a name that does not contain the words "Hanley" or "Wood" or any variation thereof within 30 days after the date of this Order. Finally, Plaintiff requests that Defendants prepare a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and submit such report to Douglas C. Herbert, counsel for Plaintiff, who will file such report with the Court.

4

Because Defendants' actions in this case demonstrate a willful disregard for Plaintiff's trademark and because the relief sought directly addresses the harm caused, the Court finds that these requests for injunctive relief are reasonable.

## II.    Anti-Cybersquatting Consumer Protection Act

In addition to its claims under the Lanham Act, Plaintiff contends that Defendants' conduct violates the Anti-Cybersquatting Consumer Protection Act (ACPA).  To succeed on an ACPA claim, Plaintiff must demonstrate that: (1) its trademark is a distinctive or famous mark entitled to protection; (2) Defendants' domain name is identical or confusingly similar to the Plaintiff's mark; and (3) Defendants "register[], traffic[] in, or use[]" a domain name with the bad faith intent to profit from it.  See 15 U.S.C. § 1125(d)(1)(A); Breaking the Chain Foundation Inc. v. Capitol Educational Support, Inc., 589 F. Supp. 2d 25, 29 (D.D.C. 2008).  In determining whether a person has acted with bad faith, the Court may consider such factors as whether the domain name consists of the legal name of the person, whether the person has previously used the name to offer goods or services for sale, and whether the person intended to divert consumers from the infringed owner's website either for commercial gain or to tarnish or disparage the mark by creating a likelihood of confusion as to the source or sponsorship of the site.  § 1125(d)(1)(B).

Here, Plaintiff has properly stated a claim under the ACPA.  First, the Complaint alleges that Plaintiff registered the domain names "hanley-wood.com" and "hanleywood.com" in 1996 and 1999, respectively.  Compl. ¶ 50.  Second, Plaintiff's Complaint contends that Defendants registered the domain name "hanleywoodllc.com" on January 22, 2010.  Id., ¶ 51.  Finally, Plaintiff asserts that Defendants acted in bad faith when they registered their domain names and intended to divert consumers of Plaintiff's goods to Defendants' web sites, both for commercial

5

gain and for the purpose of tarnishing Plaintiff's trademark. Id., ¶¶ 53-55, 57-58. Plaintiff alleges, moreover, that Defendants have no owners or employees named either "Hanley" or "Wood." Id., ¶¶ 56-57. Plaintiff, therefore, has successfully pled its claim under the ACPA, and the Court will now consider its request for damages.

In lieu of actual damages, Plaintiff has requested statutory damages in the amount $10,000, consisting of a $5,000 award from each Defendant. See Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) ("[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed.") (citing cases). The ACPA authorizes the recovery of either actual or statutory damages, at Plaintiff's election. 15 U.S.C. § 1117(d). Under the ACPA, the trademark holder may recover statutory damages from $1,000 to $100,000 per domain name, as the court considers just. Id. Courts have substantial discretion in awarding statutory damages. See Microsoft Corp. v. Compusource Distribs., 115 F. Supp. 2d 800, 811 (E.D. Mich. 2000) (citing Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229 (7th Cir. 1991)). Given that the requested amount is near the lower end of the range and that Defendants willfully violated the ACPA, the Court finds that Plaintiff's request for $10,000 in statutory damages is reasonable.

## III. Unfair Competition

Plaintiff's final count is a common law cause of action for unfair competition. Unfair competition is not defined in terms of specific elements, but by various acts that would constitute the tort if they resulted in damages. Furash & Co. v. McClave, 130 F.Supp. 2d 48, 57 (D.D.C. 2001). These acts include "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, [and] false

6

advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." B & W Mgt., Inc. v. Tasea Investment Co., 451 A.2d 879, 881 n.3 (D.C. 1982). Here, Plaintiff has pled numerous allegations that satisfy the fluid requirements of the tort for unfair competition, including but not limited to Defendants' false advertising, threats, and interference with Plaintiff's business. See Compl. ¶¶ 70-75, 77. Plaintiff is thus entitled to relief on this count as well.

As relief, Plaintiff requests an injunction preventing Defendants from continuing to engage in any further unfair competition including:

> (1) Falsely stating any intention to bring civil, criminal, or administrative actions against Plaintiff or its employees or against any person or entity known to do business with Plaintiff; and

> (2) [F]alsely advising any person or entity that Plaintiff is not operating legally in the District of Columbia, that Plaintiff does not have the right to use the name "Hanley Wood" in the District of Columbia, or that Defendants "own" any organization or entity with the words "Hanley" or "Wood" in its name;

Proposed Order to Motion at 3. Because this Court finds that the injunctive relief is necessary to prevent Defendants from continuing to act in violation of the law, Plaintiff is entitled to an injunction on the proposed terms.

## IV. Costs

Finally, Plaintiffs request costs in the amount of $500.00 to cover the filing fee and process fees for this case. As a prevailing party, Plaintiff is entitled to costs under FED. R. CIV. P. 54 and 28 U.S.C. § 1920. Plaintiff, moreover, is entitled to recover attorney's fees and costs under both the Lanham Act and the ACPA. See 15 U.S.C. § 1117(a). The Court will therefore award Plaintiff $500.00 in costs.

The Court hereby ORDERS that:

1. Plaintiffs' Motion is GRANTED; and

7

2. Default Judgment is ENTERED for Plaintiff on Counts I, II, and IV of the Complaint as set forth in the accompanying Order of Judgment.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 10, 2011